UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| HORACE TRACY MELTON and SUZANNE BASKETTE, individually, and on behalf of all similarly situated individuals, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:18-cv-167-SKL |
| CECIL LAWRENCE, DALE LAWRENCE, CECIL LAWRENCE, INC., and LAWRENCE GROUP MANAGEMENT CO., LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

## **ORDER**

Before the Court is a motion for conditional certification of a collective action and an order facilitating notice pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA") [Doc. 15], filed by Plaintiff Horace Tracy Melton ("Plaintiff").[1] Defendants Cecil Lawrence, Dale Lawrence, Cecil Lawrence, Inc., and Lawrence Group Management Co., LLC (collectively, "Defendants"[2]), filed a response in opposition [Doc. 29], and Plaintiff filed a reply [Doc. 31]. This matter is now ripe. Neither party requested oral argument in their pleadings, and the Court has determined it is unnecessary. For the reasons that follow, the motion will be **GRANTED IN PART**.

---

[1] Suzanne Baskette, named as a plaintiff in the caption, has accepted an offer of judgment since this case was filed.

[2] For simplicity's sake, the Court refers to Defendants collectively, but acknowledges Defendants' position that the "proper employer in this case was Cecil Lawrence, Inc." [Doc. 29 at Page ID # 138 n.1].

## I.    BACKGROUND

The FLSA requires many employers to pay qualifying employees 1.5 times their regular pay rate for any hours the employee works over forty in one week, i.e., for overtime. 29 U.S.C. § 207(a)(1). Plaintiff is a former employee of Defendants. Defendant Cecil Lawrence and related business entities own approximately 14 cemeteries in Tennessee and Alabama, which Cecil's son Defendant Dale Lawrence assists in managing. Plaintiff claims Defendants are subject to the FLSA overtime pay requirements, and have, or at all relevant times had, a number of employees on staff including Plaintiff who sometimes worked overtime. In lieu of paying these employees an increased wage, Defendants gave "comp time," which is future paid time off, at a 1:1 ratio. Thus, if an employee performed 48 hours of work in one week, they would accrue eight hours of comp time. If they worked only 32 hours the following week, they would still receive pay for 40 hours, and the extra eight hours would be deducted from their comp time bank. Plaintiff brought suit because he believes this system fails to comply with the overtime pay requirements of the FLSA and he seeks to vindicate his rights as well as the rights of other people who worked for Defendants. He asks the Court to certify one of the two following classes:

1.   All individuals employed by Defendants at any time since June 25, 2015, who were paid primarily on an hourly basis, who were not paid overtime compensation; and who in lieu of overtime compensation were provided with "comp time."

2.   *Alternatively*, all individuals employed by defendants at any time since June 25, 2015, who were paid primarily on an hourly basis, who were not paid overtime compensation; who in lieu of overtime compensation were provided with "comp time" and who worked at a facility that was supervised or managed by Dale Lawrence.

[Doc. 15 at Page ID # 68].

## II.    FLSA COLLECTIVE ACTION

The FLSA explicitly authorizes collective actions by a named plaintiff on behalf of themselves "and other employees similarly situated."  29 U.S.C. § 216(b).  No person may become a party, however, unless they give "consent in writing," filed with the court where the action is brought.  *Id.*  Consent, of course, requires notice, and this Court uses a two-stage certification process to determine whether the named plaintiff is "similarly situated" to the other, potential plaintiffs.  *See, e.g.*, *Burdine v. Covidien, Inc.*, No. 1:10-CV-194, 2011 WL 2976929, at *1 (E.D. Tenn. June 22, 2011) (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006) (approving two-step process); *White v. MPW Indus. Servs. Inc.*, 236 F.R.D. 363, 366-67 (E.D. Tenn. 2006) (pre-*Comer*, collecting cases and finding "greater weight of authority" supports using the two-step process)), *report and recommendation adopted in relevant part*, No. 10-CV-194, 2011 WL 2971186 (E.D. Tenn. July 21, 2011).

At the first step, the Court does not necessarily evaluate the ultimate viability of the suit. Instead, the Court will authorize notice to potential plaintiffs upon a "fairly lenient," or "modest" factual showing of similarity, then apply a more stringent standard at step two after all consents are received, or the time for submitting a consent has expired.  *See Comer*, 454 F.3d at 547 (citations omitted).  An initial finding of similarity between the named plaintiff and the potential plaintiffs results in "conditional certification," but further discovery may result in "decertification" at the second step.  *White*, 236 F.R.D. at 366 (citations omitted).  A need for individualized findings regarding different plaintiffs may be a factor in the "fact-intensive" inquiry at the second step, but it "does not preclude notice under the first-stage analysis."  *Id.* at 367, 373 (citations omitted).

## III. ANALYSIS

### A. Is Plaintiff Exempt from the Overtime Requirements?

Defendants raise a preliminary issue in their response. Some employees are exempt from the FLSA overtime protections, including those "employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1). Although Plaintiff was originally hired in April 2016 to fill an undisputedly non-exempt position (groundskeeper), he was quickly promoted to a position Defendants claim meets this exemption (Grounds Supervisor).[3] An exemption is an affirmative defense, "and an employer seeking to assert one 'must establish through clear and convincing evidence' that the employee meets every requirement of [the] exemption." *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 188 (6th Cir. 2017) (*quoting Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007)) (other internal quotation marks and citation omitted). As explained below, the parties have framed the issue as whether Plaintiff was paid a guaranteed salary, which might render him exempt, or an hourly wage.

Defendants urge the Court to consider this issue at step one, before any notice to other potential plaintiffs is issued [Doc. 29 at Page ID # 144-45]. In the past, this Court has declined to consider merits-based arguments like Defendants' at step one. *See, e.g.*, *Burdine*, 2011 WL 2976929, at *3-4 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (reasoning that court-authorized notice can facilitate the resolution of issues "arising from the same alleged discriminatory activity")) (other citations omitted). In this case, however, the bulk of the parties'

---

[3] Defendants do not expressly identify the specific capacity they believe Plaintiff meets; however, in their response they point out Plaintiff had "full authority to hire and fire and otherwise manage his crew of 6-8 employees." [Doc. 29 at Page ID # 143 n.6]. This is a characteristic of an "executive employee." 29 C.F.R. § 541.100.

briefing concerns the issue of whether Plaintiff is exempt, and Defendants contend Plaintiff cannot make even a "modest" showing that he was not exempt [Doc. 29 at Page ID # 142]. Moreover, Plaintiff's proposed FLSA class is defined as employees of Defendants "who were paid primarily on an hourly basis," without reference to any particular positions or job duties [Doc. 15 at Page ID # 68]. Thus, determining whether Plaintiff is similarly situated to these potential plaintiffs requires some inquiry into whether Plaintiff has a basis for claiming he is an hourly wage worker. In these circumstances, the Court will address the exemption issue at step one.

"Under the FLSA regulations, an employee's position must satisfy three tests" to qualify for the exemption in § 213(a)(1): "(1) a duties test; (2) a salary-level test; and (3) a salary-basis test." *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626-27 (6th Cir. 2009) (citing 29 C.F.R. § 541.700 (duties test); 29 C.F.R. § 541.600 (salary-level test); 29 C.F.R. § 541.602 (salary-basis test)) (other citation omitted). Defendants do not address the salary-level test,[4] and they only address the duties test in a footnote [*see* Doc. 29 at Page ID # 143 n.6]. Plaintiff likewise does not address the salary-level test, and he does not rebut Defendants' brief argument that he

_____

[4] The Department of Labor published a final rule effective December 1, 2016, which raised the $455 per week salary-level requirement for most exempt employees to $913 per week. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, Dep't of Labor Wage and Hour Div., 81 Fed. Red. 32391-01, 2016 WL 2943519 (May 23, 2016); *see also Brooks v. Tire Discounters, Inc.*, No. 3:16-cv-02269, 2018 WL 1243444, at *9 n.4 (M.D. Tenn. Mar. 8, 2018) (citations omitted). A district court in Texas enjoined the Department of Labor from enforcing the new rules, and later found them invalid; it appears that court's decisions are pending on appeal in the Fifth Circuit. *Nevada v. U.S. Dep't of Labor*, 275 F. Supp. 3d 795 (E.D. Tex. 2017) *appeal filed*, No. 17-41130 (5th Cir. Nov. 2, 2017); *Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520 (E.D. Tex. 2016) *appeal filed*, No. 16-41606 (5th Cir. Dec. 1, 2016). Plaintiff made only $800 per week as a Grounds Supervisor, and most of his work for Defendants was done after the effective date of the new regulation. The parties do not address this issue, and the Court has concluded that Defendants failed to produce sufficient proof that Plaintiff meets the salary-basis test to defeat Plaintiff's motion for conditional certification, so it is unnecessary to consider the salary-level test further in this memorandum and opinion.

meets the duties test. In other words, the majority of the argument on the exemption issue concerns the salary-basis test.[5]

The salary-basis test regulation provides:

> (a) General rule. An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work. An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

29 C.F.R. § 541.602(a).

Once he was promoted to Grounds Supervisor, Plaintiff's total earnings remained steady at $1600 every two weeks until he quit in March 2018 [Doc. 29-1]. Plaintiff nevertheless claims he was not a salaried employee because he was not guaranteed a salary on at least a weekly basis; rather his only guarantee was $20 per hour. Plaintiff asserts that when he worked more than 40

---

[5] It is worth noting that the Texas court referenced in the previous footnote enjoined and invalidated a number of regulations along with the salary-level test, including the salary-basis test (29 C.F.R. § 541.602), and two others cited in this memorandum and order (29 C.F.R. §§ 541.100 & .604). Nevertheless, the basis for the Texas court's decision was that the increase in the salary "supplants the duties test," because it would change the exemption status of millions of workers "without a change to their duties." *Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d at 530-31. The Texas court concluded the Department of Labor exceeded its authority granted by Congress because Congress intended the exemption to be primarily defined by an employee's duties, not salary. *Nevada v. U.S. Dep't of Labor*, 275 F. Supp. 3d at 807-08. Because Plaintiff's salary level is not presently an issue before the Court, the Court will apply the regulations despite the Texas court's ruling.

hours in one week, Defendants added the hours over 40 to his comp time bank at a 1:1 ratio; and when he worked less than 40 hours in one week, Defendants deducted the hours from his comp time bank to get to 40, the same way Defendants did for all hourly wage workers, including Ms. Baskette. Plaintiff further attests he requested a salaried position as part of his promotion, but Defendant Dale Lawrence refused, instead offering to pay Plaintiff the $20 hourly rate, which Plaintiff accepted [Plaintiff's Aff., Doc. 15-1 at Page ID # 81, ¶ 4].

Plaintiff submits affidavits from Ms. Baskette and from Vickie Parks, who both worked for Defendants as administrators and kept track of employees' comp time. Ms. Baskette's affidavit states: "Prior to Dale Lawrence hiring [Plaintiff], he asked me if I thought [Plaintiff] would come to work for him for $20.00 per hour. Then [Plaintiff] worked by the hour and was paid $20.00 per hour." [Doc. 15-2 at Page ID # 86, ¶ 17]. Ms. Parks's affidavit states that she handled Plaintiff's time cards, and she "did not think he was paid a salary"; rather, she thought he was "paid according to the comp time method just like everyone else." [Doc. 31-3 at Page ID # 187, ¶ 9]. Ms. Parks further attests that she was an hourly-wage employee and was paid with comp time rather than an increased wage for her overtime hours [*id.* ¶¶ 3-4]. Finally, Plaintiff submits copies of time card summaries from various weeks ranging over a period of years [Docs. 15-3 through 15-6, 31-1, 31-2]. Each summary covers a number of employees, and lists their name, hours worked, personal time gained, personal time used, hours to be paid for, and the amount of comp time the employee has accumulated. The time card summaries show there were many weeks in which Plaintiff did not perform 40 hours of work, although the weeks are not broken down to show whether Plaintiff took off partial days or full days, or whether the time off was Plaintiff's decision or Defendants' requirement. The time card summaries also show Ms. Baskette typically worked fewer overtime

hours than Plaintiff [*see, e.g.*, Doc. 15-3 at Page ID # 89 (June 9, 2017 entry showing zero hours for Ms. Baskette and 84.25 for Plaintiff)].

Defendants submit Plaintiff's pay records, which confirm that after his promotion (first reflected in his June 10, 2016, check), Plaintiff was always paid $1600 every two weeks, but they also state Plaintiff always worked exactly 80 hours [Doc. 29-1]. The records further show Plaintiff received four checks prior to his promotion, and his pay during that time varied based on the number of hours he worked [*id.* at Page ID # 150]. For the most part, the pay records do not reflect when Plaintiff used or accrued comp time. There are two instances shown in the pay records when Plaintiff took an entire week off, in September 2017 and February 2018, that are marked "vacation," although the amount of any remaining vacation time is not listed in the pay records [*id.* at Page ID # 151, 153]. For the September vacation, the time card summaries show Plaintiff's comp time bank was reduced by forty hours [Doc. 31-2 at Page ID # 182-84]. As far as the Court can tell, the record does not include any time card summaries from February 2018. Finally, the pay records list Plaintiff's pay as "20.00/Hour" [Doc. 29-2 at Page ID # 150].

Defendants also submit Ms. Baskette's pay records, which show that the amount of her pay varied based on the number of hours she worked [Doc. 29-2], and the affidavit of Frankie Lord, the controller for Defendant Cecil Lawrence, Inc. [Doc. 30]. Mr. Lord attests that Plaintiff played a significant managerial role and had the authority to hire and fire groundskeepers [*id.* at Page ID # 163 ¶ 11]. Mr. Lord also attests that Plaintiff was "guaranteed a salary of $1600 every two weeks." [*Id.* at Page ID # 164, ¶ 17]. He claims that when Plaintiff was promoted in June 2016, Plaintiff "asked for pay for the comp time he accrued up to that point, ostensibly knowing that he would no longer be paid for hours worked over 40." [*Id.* at Page ID # 163, ¶ 13]. The additional pay for the comp time is reflected in Plaintiff's check dated June 10, 2016 [Doc. 29-1 at Page ID # 150]. Mr.

Lord also claims Plaintiff had no saved comp time when Plaintiff was off for a week in February 2018 and was still paid; he states Plaintiff had used all of his accrued comp time in "the previous year," which the Court interprets as meaning by the end of 2017 [Doc. 30 at Page ID # 164, ¶ 21].

After careful consideration, the Court concludes Defendants have failed to present sufficient proof that Plaintiff was exempt to prevent conditional certification; rather, Plaintiff has made a sufficient factual showing that he is not exempt to survive step one.

First, the Court is puzzled by Mr. Lord's explanation of Plaintiff's decision to cash in his comp time hours when Plaintiff was promoted. Defendants make the same argument in their brief—that Plaintiff's decision to cash in his comp time hours in exchange for $400 indicates Plaintiff knew he would no longer be receiving payment for overtime, because his new position was salaried [Doc. 29 at Page ID # 139-40]. In so arguing, Defendants appear to concede Plaintiff was paid with comp time for hours worked over 40 before his promotion. But what about this arrangement changed after he was promoted? The record clearly reflects Plaintiff continued to accrue comp time for hours per week worked over 40 after he was promoted, the comp time hours were reduced when he worked less than 40 hours per week, and he cashed in his remaining comp time when he quit in March 2018. Perhaps Plaintiff cashed in his comp time when he was promoted because he needed money or wanted to celebrate his promotion. Perhaps Defendants required him to do so as a matter of administrative convenience because his pay increased with the promotion. In any event, the fact that Plaintiff cashed in his comp time when he was promoted does not establish Plaintiff knew he would no longer be paid for hours worked over 40.

Defendants draw another shaky conclusion about the differences between Plaintiff's pre- and post-promotion pay status. Specifically, they point to Plaintiff's first two paychecks (covering the first four weeks of employment, when Plaintiff was undisputedly an hourly wage worker),

which show that when Plaintiff "worked less than 40 hours a week, his pay was reduced to correspond to the number of hours he worked." [Doc. 29 at Page ID # 140]. They argue this contrasts with his pay after he was promoted, which was always $1600 per biweekly pay period, thereby showing his pay status changed. But Defendants overlook the fact that Plaintiff had no comp time saved up during his first four weeks of employment—he worked 8.5 hours in the first two-week pay period, and 64 hours in the second two-week pay period [Doc. 29-1 at Page ID # 150]. He worked only two more two-week pay periods before being promoted, during which time he clearly worked well over 40 hours per week (enough to accrue $400 worth of comp time, as discussed above), but was only paid for 80 hours each, the same as after he was promoted [*id.*]. Accordingly, the variation in his pay during the first two pay periods could be more a function of a lack of comp time than evidence that Plaintiff's pay status changed when he began receiving consistent $1600 checks every two weeks.

Still, if Defendants could show Plaintiff was paid the full $1600 during some pay period when he had no comp time saved, their position might be stronger.[6] However, despite Mr. Lord's affidavit, the current record is not clear regarding whether Plaintiff had any comp time saved in February 2018 when he took a week off and was still paid. The time card summaries show Plaintiff had 34.5 hours of comp time saved as of January 7, 2018 [Doc. 15-4 at Page ID # 97]. At the very least this would seem to contradict Mr. Lord's claim that Plaintiff used all of his comp time in "the previous year" [Doc. 30 at Page ID # 164, ¶ 21]. Mr. Lord offers no explanation for how Plaintiff

---

[6] As discussed below, the question of whether Plaintiff's weekly salary was guaranteed is significant in determining whether the salary-basis test is met. *Hughes*, 878 F.3d at 190-91 (citations omitted). Thus, as Plaintiff points out, even if he was paid for vacation time when he had no comp time saved, he could still be exempt if the payment was not guaranteed [Doc. 31 at Page ID # 172]. Nevertheless, paid vacation time in the absence of available comp time could certainly be evidence of a guarantee in this case and therefore relevant.

had so many comp time hours by the end of the first week of January 2018 if he carried none over from 2017; nor does he describe a company fiscal year that differs from the calendar year. The pay records show Plaintiff's vacation was noted in his check dated February 16, 2018 [Doc. 29-1 at Page ID # 153], making the time period from January 7, 2018, to February 16, 2018 crucial for determining whether Plaintiff was paid even when he had no comp time. The problem is there are no records showing Plaintiff's accrual or use of comp time between January 7, 2018, and February 16, 2018. There are no time card summaries dated after January 7, 2018, and while there are pay records for this period, the pay records do not track the accrual or use of comp time other than to note the weeklong vacations.[7] Mr. Lord's sworn affidavit as controller of Defendant Cecil Lawrence, Inc., is itself evidence, of course. But it is not convincing enough to defeat conditional certification given that the record is unclear concerning the amount of comp time Plaintiff had saved at the end of the prior year and the lack of any evidence showing Plaintiff's use or accrual of comp time specifically between January 7, 2018, and February 16, 2018.

This leaves the fact that Plaintiff consistently received $1600 in pay every two weeks. Plaintiff argues this is not enough to defeat his motion for conditional certification, relying heavily on the Sixth Circuit's 2017 decision in *Hughes v. Gulf Interstate Field Services, Inc.* The issue in that case was whether welding inspectors were paid on a salary basis. 878 F.3d at 188. The inspectors introduced evidence showing they were paid at a rate of "$337/Day Worked," and that they were informed prior to beginning work that they would be working six days per week. *Id.* at 185-86. There was also evidence that they were to be paid for six days even if they only worked five. *Id.* at 186. Over the course of about eighteen months, they consistently received pay for at

---

[7] As mentioned, the prior "vacation" reflected in Plaintiff's September 2017 pay records resulted in a corresponding 40-hour reduction in his comp time bank [Doc. 29-1 at Page ID #151; Doc. 31-2 at Page ID # 183-84].

least six days of work per week, they were paid for holidays even if they did not work, and they were paid on days they were out sick. *Id.* The court noted that during "the months that they worked, . . . there does not appear to have been a week during which [the inspectors] did not receive pay consistent with a guarantee of a weekly salary equivalent to six days of work at ten hours per day." *Id.*

The employer argued that because the inspectors actually received consistent weekly pay, they were salaried. *Id.* at 187. The inspectors argued, and the Sixth Circuit agreed, that a *guarantee* of a certain weekly (or less frequent) pay is required for an employee to be considered salaried, even when the amount of weekly pay is in fact consistent over time. *Id.* at 190-91 (citations omitted).[8] In denying the employer's motion for summary judgment, the court found the employer introduced evidence "*consistent with* a weekly guarantee," but failed to show that no reasonable juror could conclude the "payments were matters of grace rather than right." *Id.* at 191. Specifically, the court acknowledged evidence of "verbal guarantees" given by the employer at the outset of employment, noting the inspectors' case "may well" be weakened by these guarantees. *Id.* at 192. The court also acknowledged the case would be different if the employer had consistently

---

[8] The Court notes *Hughes* was decided before the United States Supreme Court decided *Encino Motors, LLC v. Navarro*, 138 S. Ct. 1134 (2018), and *Hughes* recites the now-defunct rule that exemptions must be strictly construed against the employer. *Hughes*, 878 F.3d at 188 (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The Supreme Court struck this rule down in *Navvaro*, instead holding that the exemptions must be given a "fair reading." 138 S. Ct. at 1142. This Court nevertheless concludes that the rule announced in *Hughes*—that a guarantee is required—would not be changed in light of *Navarro*. *Hughes* relied more heavily on the strict construction rule when weighing the evidence to determine whether a guarantee was in fact made, than it did when determining whether a guarantee was required at all. At least one other court in the Sixth Circuit has required the "guarantee" articulated in *Hughes*, while also recognizing the holding in *Navarro*. *See Roshon v. Eagle Research Grp., Inc.*, 314 F. Supp. 3d 852, 858, 861-64 (S.D. Ohio 2018) (citations omitted) (applying *Navarro*, but also applying *Hughes* and denying employer summary judgment on salary-basis test in light of question of fact regarding whether pay was guaranteed).

paid the inspectors the same weekly amount for "decades," rather than for about eighteen months.

*Id*.

In so holding, the court relied in part on the language of 29 C.F.R. § 541.604(b), which provides:

> An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement **also includes a guarantee of at least the minimum weekly required amount paid on a salary basis** regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.

*Id* (emphasis added); *see Hughes*, 878 F.3d at 190-91. The court also relied on a 2003 Department of Labor opinion letter which states that "[p]ayment on an hourly basis without an operative salary guarantee does not qualify as a 'salary basis' of payment within the meaning of the regulations." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, Fair Labor Standards Act (July 9, 2003), 2003 WL 23374601, at *2; *See Hughes*, 878 F.3d at 191.

Defendants do not address *Hughes*. Instead, they briefly mention a 2005 Department of Labor opinion letter relating to salaried employees and leave bank deductions [Doc. 29 at Page ID # 144 (citing U.S. Dep't of Labor, Wage and Hour Div., Opinion Letter, Fair Labor Standards Act (Jan. 7, 2005)) ("FLSA2005-7")[9]]. FLSA2005-7 states that deductions from an employee's *leave bank* may be made without affecting the employee's status as salaried, while deductions from an employee's *pay* could affect salary status. If Defendants were able to establish the weekly guarantee required by *Hughes*, then perhaps they could rely on FLSA2005-7 in support of their position that the comp time system did not remove Plaintiff from the contours of the exemption. But FLSA2005-

---

[9] The Court last accessed this opinion letter on October 17, 2018, at: https://www.dol.gov/whd/opinion/FLSA/2005/2005_01_07_7_FLSA_PaidTimeOff.htm.

7 does not help Defendants' cause in establishing Plaintiff's pay was guaranteed on at least a weekly basis.

Defendants next cite *Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512 (6th Cir. 2004), for the proposition that an employer can track an employee's time without rendering the employee non-exempt under the salary-basis test [Doc. 29 at Page ID # 144]. In that case, the Sixth Circuit found the employees/plaintiffs met the salary-basis test, reasoning:

> Although the [plaintiffs] concede that **they receive at least $250 per week**, they argue that they cannot be exempt even though salaried because [the employer/defendant] requires them to account for at least 40 hours of work each week and to make up for partial-day absence either by working extra hours or by taking vacation time or paid time off. An employer may require exempt salaried employees to make up for time missed from work due to personal business. **It is only when an employer actually deducts from an employee's paycheck that the employee is ineligible for the exemption. Because the [employees] concede that [the employer] has not docked their salaries for missed time from work, their argument in this regard fails.**

*Id.* at 516 (citations omitted) (emphasis added). At first blush, this language from *Renfro* would seem to support Defendants' argument and foreclose Plaintiff's claims, as Plaintiff also never received a deduction in his pay after his promotion, regardless of the number of hours he worked. But, significantly, the *Renfro* court does not actually analyze whether the $250 per week was guaranteed, likely because the existence of the guarantee was not in dispute. To receive the full $250 in a week during which an employee took a partial day off, the employee was required to "make up for partial-day absence either by working extra hours or by taking vacation time or paid time off." *Id.* In other words, they had to "account for at least 40 hours of work each week." *Id.* The clear implication is that employees were guaranteed 40 hours of work per week, such that if they took off say, a Monday afternoon, they could come in early or stay late another day and there would be work available for them to do at that time. That type of a guarantee—that "make up"

work would be available on another day to get Plaintiff to 40 hours in a week when he needed a partial day off and had no comp time saved—is not at all clear in the case at bar. Indeed, it may be reasonable to infer that certain types of cemetery grounds keeping are time sensitive. Accordingly, *Renfro* does not compel the conclusion that Plaintiff is exempt, at least on the current record at this stage in the proceedings.

True, Plaintiff was paid in a consistent amount every two weeks for almost two years, even during pay periods when he performed less than 80 hours of work. Nevertheless, the only evidence this pay was guaranteed is Mr. Lord's affidavit claiming that Plaintiff "was converted to a salary" when he was promoted, and that Plaintiff "was guaranteed a salary of $1600 every two weeks." [Doc. 30 at Page ID # 163-64, ¶¶ 9, 17]. Plaintiff also produced affidavits—his own, Ms. Baskette's, and Ms. Parks's—which all suggest Plaintiff's only guarantee was $20/hour [Doc. 15-1 at Page ID # 81-82, ¶¶ 4-5; Doc. 15-2 at Page ID # 86, ¶ 17; Doc. 31-3 at Page ID # 187, ¶ 9]. There is no other proof in the record regarding whether Plaintiff was guaranteed to receive his full pay if he worked less than 40 hours in a week and had insufficient comp time banked to cover the difference. *See* FLSA2005-7 ("Where an employer has a benefits plan . . . , it is permissible to substitute or reduce the accrued leave in the plan for the time an employee is absent from work, . . . without affecting the salary basis of payment, if the employee nevertheless receives in payment his or her guaranteed salary. Payment of the employee's guaranteed salary must be made, even if an employee has no accrued benefits in the leave plan and the account has a negative balance, where the employee's absence is for less than a full day."). Nor is there any other proof Plaintiff was guaranteed 40 hours of work per week.

Mr. Lord's affidavit and the pay records are not enough to defeat conditional certification, especially in light of the conflicting accounts from Plaintiff, Ms. Baskette, and Ms. Parks.

Defendants have not shown by clear and convincing evidence that Plaintiff was exempt; rather, Plaintiff has shown he has a colorable basis for his FLSA claims against Defendants.

**B.      Are the Named and Potential Plaintiffs Similarly Situated?**

As mentioned, Plaintiff seeks to certify a class composed of all Defendants' hourly-wage employees who were paid with comp time for their weekly hours worked over 40.  Alternatively, he would limit his class to those employees who work at cemeteries supervised by Defendant Dale Lawrence, because Plaintiff believes Dale is the "brainchild" of the comp time system [Doc. 15 at Page ID # 71].

Defendants briefly argue the conditional certification should only be permitted as to the three Grounds Supervisors Defendants employ: Plaintiff and two individuals who work at cemeteries in Alabama [Doc. 29 at Page ID # 145].  Defendants' stated position is, "the only appropriate scope would be [to] include those two individuals who, like [Plaintiff], were paid on a salaried basis.  Of course, those two individuals are also properly exempt from the FLSA and ultimately, no collective action should be authorized whatsoever based upon the motion currently pending." [*Id.*].  The Court has already determined Defendants have failed to show Plaintiff is exempt as "salaried," at least at this stage in the proceedings, so this argument fails.  Defendants do not otherwise object to the inclusion of all hourly-wage employees at all Defendants' cemeteries.

Additionally, as Plaintiff points out, the Sixth Circuit has emphasized that "it is clear that plaintiffs are similarly situated when they suffer from a single FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."  *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated in part on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).  The *O'Brien* court did not discuss the particularities of the various employee/plaintiffs' job duties/positions, instead

finding they were substantially similar "because plaintiffs articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets." *Id.* at 585. Indeed, the court rejected the employer/defendant's argument that the employees were not similarly situated because some of them were managers. *Id.* at 586 (noting "managers could also have been cheated by defendants").

Through the affidavits and time card summaries discussed above, Plaintiff has made a sufficient showing that Defendants used a comp time system for paying their hourly-wage employees overtime in lieu of increased pay, which would be a violation of the FLSA if proven, and that the practice was common at least among hourly-wage employees working at two of Defendants' cemeteries (Sunset Memorial Gardens and Hillcrest Memorial Gardens). Defendants have not argued this practice was limited to these two cemeteries, or to the cemeteries managed or supervised by Defendant Dale Lawrence. Defendants also admit that Dale "assists in the management of the cemeteries," referring to all 14 cemeteries [Doc. 29 at Page ID # 139]. Plaintiff alleges many of the cemeteries have less than 5 employees [Doc. 15 at Page ID # 76], which Defendants do not dispute, indicating a manageable class size of opt-ins. Finally, even the broader class that encompasses all of the cemeteries is limited to hourly-wage employees who were paid comp time. Thus, anyone paid with comp time for overtime work would have been subject to the same alleged FLSA violation, whether they were managed by Defendant Dale Lawrence or not. Accordingly, the Court will conditionally certify, and allow notice of this action to be sent to members of, Plaintiff's broader class encompassing employees at all of Defendants' cemeteries:

> All individuals employed by defendants at any time since June 25, 2015, who were paid primarily on an hourly basis, who were not paid overtime compensation; and who in lieu of overtime compensation were provided with "comp time."

[Doc. 15 at Page ID # 68].

### C.    Remaining Issues Concerning Notice and Consent Form

The Court has already determined the scope of the authorized class to receive notice; the only remaining issues concern the content/form of the notice, the consent form, and the manner in which these item(s) are disseminated.

"There is no 'one-size-fits all' approach to notifying putative class members" in FLSA lawsuits. *Fenley v. Wood Group Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016). "The goal in sending notice is to provide accurate and timely notice to potential opt-ins while promoting judicial economy." *Davis v. Colonial Freight Sys., Inc.*, No. 3:16-CV-674-TRM-HBG, 2018 WL 2014548, at *3 (E.D. Tenn. Apr. 30, 2018) (citation omitted). The Court must avoid "communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Hoffmann-La Roche*, 493 U.S. at 169 (citation omitted).

Plaintiff's proposed notice is attached as Exhibit 7 to his motion [Doc. 15-7]. Plaintiff seeks to transmit the notice to the authorized class through an unspecified medium, and then to "send a follow-up postcard to any class members who have not responded thirty days after the mailing of the initial notice." [Doc. 15 at Page ID # 77-78]. Plaintiff asks that Defendants be ordered to "provide plaintiffs' counsel with the last known addresses, phone numbers, e-mail addresses and any other relevant contact information of the class members," as well as the birth date and partial security number for any class member "whose mailed notice is returned by the post office" [*id.* at Page ID # 77].

Defendants do not object to the notice initially being transmitted through the United States Post Office. They do object to "multiple notices being sent in multiple different ways—mail, email, text, etc." [Doc. 29 at Page ID # 146]. They also object to any follow up correspondence with class members who fail to respond to the first notice. As far as the content of the notice, Defendants

point out Plaintiff failed to designate the length of the opt-in period, and they propose 45 days from the date Defendants provide the contact information for the class members.  They also ask that the notice include "language giving opt ins notice that the Defendants have disputed liability for an alleged violation and that if Defendants are successful in prevailing on the exemption issue, then opt ins may face individual liability for costs and fees associated with the defense of this matter." [*Id.* at Page ID # 147].  Defendants argue this information "is necessary for individuals to make informed decisions about whether or not to opt-in to an action." [*id.* (citing *Pierce v. Wyndham Vacation Resorts, Inc.*, No. 3:13-CV-641-PLR-CCS, 2015 WL 574501 (E.D. Tenn. Feb. 11, 2015)].

Plaintiff does not explicitly request to send the initial notice in multiple forms, or respond to Defendants' objection on the issue.  He implies that he will use the United States Postal Service ("USPS"), which Defendants are agreeable to.  Accordingly, Plaintiff is **ORDERED** to send the initial notice through the USPS, only.  If the initial mailed notice is returned by the USPS as undeliverable, Plaintiff is also permitted to resend the initial notice by USPS and by email.  *See, e.g.*, *Davis*, 2018 WL 2014548, at *4 (collecting cases and finding "[c]onsistent with this Court's past practice, first class mail and email are appropriate" methods of service for FLSA notice).

As for follow-up postcards, Plaintiff cites two cases approving their use from district courts in California; however, this Court has declined to allow the use of reminder notices.  *Id.* (citing *Hoffman-La Roche*, 493 U.S. at 168-69, 174; *Fenley*, 170 F. Supp. 3d at 1074-75 (reminder notice not permitted "because it may unnecessarily 'stir up litigation' or improperly suggest the Court's endorsement of Plaintiff's claims")); *see also Phipps v. Chariots of Hire, Inc.*, No. 3:17-CV-97-TAV-HBG, 2017 WL 4228028, at *6 (E.D. Tenn. Aug. 29, 2017) (same (citation omitted)), *report and recommendation adopted*, No. 3:17-CV-97-TAV-HBG, 2017 WL 4202228 (E.D. Tenn. Sept.

21, 2017). Plaintiff identifies no compelling reason why a follow-up is necessary in this case. Accordingly, the Court will not permit the follow-up postcard.

Plaintiff did not object to the 45-day opt-in period proposed by Defendants, and the Court agrees it is adequate and reasonable. Plaintiff is **ORDERED** to include the length of the opt-in period in the notice. The 45-day opt-in period will begin to run the day after Defendants provide Plaintiff with the home addresses and phone numbers of all potential opt-in class members.

Also, and in light of no objection from Plaintiff, the Court finds Defendants' proposal for including language about a potential award of Defendants' attorney fees and costs well-taken. Plaintiff is **ORDERED** to include the following language on this issue in the notice:

> The attorneys proposed to act on your behalf have accepted this case on a contingency basis. Therefore, if you use these lawyers, you will not be required to pay any legal fees to these lawyers, unless there is a monetary recovery in this case. If there is a recovery, your lawyers will receive a portion of the proceeds in the amount deemed reasonable by the Court. If there is no recovery, the lawyers acting on your behalf will receive nothing. However, if the defendants prevail, it is possible that their lawyers will recover fees and costs, for which you may be responsible for a proportional share.

*See Pierce*, 2015 WL 574501, at *4 (citing cases and finding "this language is consistent with the case law" of the Eastern District of Tennessee).

Plaintiff is further **ORDERED** to correct the opening paragraph of the notice to reflect the scope of class conditionally certified in this memorandum and order and to remove any reference to Ms. Baskette as a plaintiff. Notwithstanding the issues identified herein, the Court finds the language of the notice is neutral, and the language would not give the appearance that the Court endorses the merits of the case. *See Hoffman-La Roche*, 493 U.S. at 174.

The notice instructs potential class members to complete and return a "Consent to Join" form to Plaintiff's counsel in order to join in the lawsuit [Doc. 15-7 at Page ID # 106]. The proposed consent form is not attached to the proposed notice, and the Court was not able to locate it elsewhere in the record. The Court will not approve the notice without seeing and approving the consent form. Therefore, the parties are **ORDERED** to confer within **seven days** of the entry of this memorandum and order to attempt to jointly submit an amended proposed notice and consent form that are consistent with the holdings set forth herein. If the parties are unable to agree on a jointly submitted amended proposed notice and consent form, Plaintiff is **ORDERED** to file a motion seeking Court approval of his amended proposed notice and consent form within **14 days** of the entry of this memorandum and order**.** Defendants are **ORDERED** to file within **seven days** of Plaintiff's filing of his amended proposed notice and consent form a response (including their proposed notice and consent form) indicating whether they believe Plaintiff's amended proposed notice complies with this memorandum and order, and whether they have any objections to the proposed consent form. Plaintiff may file a reply within **three days** of Defendants' response**.**

Finally, to facilitate the dissemination of the notice, Defendants are **ORDERED** to provide Plaintiff with the last known home address and phone number of all potential class members within **14 DAYS** of entry of the Court's order approving the notice and consent form. If any potential class member's mailed notice and consent form is returned by the USPS as undeliverable, Plaintiff **SHALL** notify Defendants, and Defendants **SHALL** provide Plaintiff with the email address, birth date, and partial social security number for that person **WITHIN 48 HOURS**.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification of a collective action and an order facilitating notice pursuant to the FLSA [Doc. 15] is **GRANTED IN PART.**

As set forth in greater detail above, the parties are **ORDERED** to confer within **seven days** of the entry of this memorandum and order to attempt to jointly submit an amended proposed notice and consent form. If the parties are unable to agree on a joint submission, Plaintiff is **ORDERED** to file a motion with his amended proposed notice and consent form within **14 days** of the entry of this memorandum and order**.** Defendants are **ORDERED** to file a response within **seven days** of Plaintiff's motion and Plaintiff may file a reply within **three days** of Defendants' response**.**

Plaintiff is further **ORDERED** to disseminate the any Court approved notice and consent form consistent with the instructions in this memorandum and order; specifically, to send the notice and consent form initially by USPS. For any notice and consent form returned as undelivered, Plaintiff is permitted to resend the notice and consent form, including by email.

Defendants are **ORDERED** to provide Plaintiff with the last known address and phone number of all potential class members within **14 DAYS** of entry of the Court's order approving the notice and consent form. Defendants are further **ORDERED** to provide Plaintiff with the email address, birth date, and partial social security number for any class member whose initial USPS mailing is returned as undeliverable within **48 HOURS** of receiving notice of the returned mail from Plaintiff.

Finally, there is currently no scheduling order in place for this case. Accordingly, the parties are **ORDERED** to confer about when they deem it prudent to hold a scheduling conference and to jointly contact the Court (if by email, then at lee_chambers@tned.uscourts.gov) with proposed dates for the scheduling conference.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE